Clark *v.* Anderson.

## City Court.

*Trial Term—January,* 1886.

## ABRAHAM H. CLARK ET AL. *against* JOHN B. ANDERSON ET AL.

Negligence—Overflow of water: Liability of occupant. A tenant is not chargeable with the duty of turning off a stop-cock on his premises, unless he has knowledge or notice that there is a stop-cock on his portion of the premises, and that there is danger of an overflow of water unless the stop-cock is turned off. Negligence cannot be inferred or guessed at from the mere fact of an injury. It must be proved. Tenants have the right to assume and act on the assumption that the water apparatus connected with the closets and house are so con-

structed that they will carry away into the streets or sewers whatever water, can, in the ordinary way, reach their premises or the closets attached to them.

Motion for a new trial on the judge's minutes.

McADAM, Ch. J.—This cause was first tried in February, 1884, before the court without a jury, and resulted in a judgment in favor of the plaintiffs.

Upon appeal, the judgment was reversed and a new trial ordered, on the ground that there was not sufficient proof of negligence on the part of the defendants, to charge them with the loss which the plaintiff suffered. The facts are fully stated in the opinion filed by the general term, February 25, 1885,* reference to which is made, as settling, so far, at least, as this court is concerned, the law applicable to the case. The action came up for new trial, and, after the plaintiffs rested their case, the complaint was dismissed on the ground that they had failed to prove any negligence on the part of the defendants, so that the ground of dismissal and of reversal by the general term are the same, and one followed the other as a necessary sequence; for, unless there is some fact, fixing liability on the defendants, proved on this trial, which was omitted on the one previously had, the decision of the general term ought to be followed. There is some little difference in the proof, but not sufficient to substantially change the facts or to alter the final result. The main fact stands prominently forth that the proximate cause of the injury was the failure to shut off the stop-cock on the defendants' floor, before leaving for the day on January 19, 1883, or the insufficiency of the waste-pipes connected with the water-closet (where the overflow occurred) to carry away the water as fast as it came in. The overflow occurred between Saturday night and Monday morning, when it was discovered. In determining

* See *ante,* page 115.

Clark *v.* Anderson.

this motion, these two grounds will be considered, and these two circumstances, regarded by the plaintiffs' counsel as material will be examined, with a view of determining whether all things considered negligence in the legal sense of that term have been successfully established against the defendants.

First, in regard to the stop-cock on the defendants' floor. From the time the defendants moved upon the floor they occupied, they had not shut off the stop-cock. No one told them they ought to shut it off. No reason why they should shut it off was ever made apparent, until the present injury occurred. No overflow had ever occurred before, and the defendants had not omitted any precaution which they had before exercised. Wherein, then, does the negligence consist ? Unless it be incumbent upon every tenant who occupies a floor to search for stop-cocks and turn them off before he leaves for the day or retires for the night, it is clear that the defendants herein were not guilty of negligence in not looking for and turning off the stop-cock on their floor. They might have found the stop-cock if they had looked for it, and they might have gone further and turned off the water if they had known that was necessary for the safety of the building or of the property of the occupants. I hold that a tenant is not charged with this duty unless he has the knowledge or notice : First, that there is a stop-cock on his portion of the premises. Second, that there is danger of overflow or injury unless it is turned off. In other words, a tenant who moves into a house has the right to assume that the water-pipes and plumbing are in good order and well regulated, and will answer all the requirements of such fixtures, so that damage will not occur except by misuse or gross neglect. The defendants did no more nor less on this occasion than they had done since they had moved into the building. They were never charged with negligence before; but, because the water ascended to their floor for the first time on that particular

Sunday, and the water fixtures failed to carry the water away as fast as it came in, the charge of neglect is made. The defendants did not act out of the ordinary course, but strictly according to it. The overflow was unexpected, they had no reason to anticipate it; and they were certainly not the cause of it. It is not necessary to put the fault on any person not a party to the action, for it is sufficient for present purposes that the plaintiffs have failed to establish negligence against the defendants, and have, in consequence, failed to put the fault upon them.

Second. In regard to the insufficiency of the waste-pipes. The plumbing work was not put in by the defendants. They had nothing to do with its construction, and they are in no way liable for its imperfections or insufficiencies. The pipes were there when they moved in, and were in the same condition when the accident occurred. There is certainly nothing in this theory upon which negligence could be found against the defendants. The plaintiffs' counsel claims that the defendants may be held on two other grounds, viz.: First, because they had the plumbing repaired. Second, because they allowed the drip and safe to be clogged up.

The defendants did not change the plumbing work, and no act of theirs in repairing caused the overflow or prevented the pipes from carrying the water away; so that the act of repairing is in no way associated with the cause of the injury. The pressure of water at nights and on Sundays is so great in the lower portion of the city (according to the evidence), that, unless shut off, the water is likely to ascend on those occasions much higher than during the day, when the use of water by manufacturers and others diminishes the supply. This circumstance, it appears, caused the overflow; but there is no evidence that the defendants knew, or had reason to believe, that the overflow would, or even might, occur unless the stop-cock was shut off. Why an overflow had not occurred before does not appear. It must be assumed that there was

Clark *v.* Anderson.

never such a pressure of water before, or that some one on the lower floors had previously shut the water off, and that it did not in consequence ascend. The clogging of the drip-pan or safe had nothing to do with the cause of the injury. The drip-pan was never intended to carry away a steady stream or overflow of water. It was what its name implies—a pan for collecting dripping. The tell-tale ran into the drip-pan to indicate that the tank on the closet was full, so that the man pumping the water up (it had to be pumped up in the daytime) could tell when to stop pumping. The dripping of temporary overflow was notice to him to stop his efforts as the tank was full.

These drippings were not sufficient to overflow the pan, wet the floors, or damage property, and the damage complained of did not arise from the use of the pump, or drip-pan or safe. The contention is, that after every one had left the building for the day the water ascended up to the tank on defendants' floor, and, because the stop-cock was not shut off and the fixtures connected with the closet tank did not carry the water away as fast as it came in, the overflow occurred, thus, of course, doing the damage complained of. It requires no scientist or skilled expert to determine the cause of the damage. The case is unfortunate in this : the plaintiffs have suffered an honest loss, and ought to be compensated for it; they feel that they ought to have a legal remedy against some one, and there is generally no wrong without a remedy, and they have concluded that as the water that did the damage came from the defendants' floor, they should make good the loss. This is natural enough, but this result does not necessarily follow ; for, in order to establish a valid claim against the defendants, the plaintiffs are bound to prove affirmatively that the damages were caused by some negligent act on the part of the defendants, either of omission or commission. The text-books tell us that negligence cannot be inferred from the mere fact of an injury, nor

can it be guessed at. It must be proved. It has not been proved in this case.

If the defendants had done or omitted to do, on this occasion, anything which they had done before, or if they had omitted any precaution which they had been warned to take, and damages had ensued in consequence, negligence would be established. But the mere omission to shut off a stop-cock, which the defendants had never shut off before, and in respect to the uses and purposes of which they had never been instructed, is not evidence from which negligence is necessarily inferable. They had no notice or admonition that the failure to shut off the stop-cock would or might cause or permit an overflow or produce any injurious results, and they were not bound to know that the evil results would follow the omission. They had the right to assume and act upon the assumption that the water apparatus connected with the closets and house were so constructed that they would continue to carry away into the streets or sewers whatever water could in the ordinary way reach their premises or the closets attached to them.

A person who undertakes to do an act, and does it so carelessly as to injure his neighbor, is cleary guilty of negligence; but a person who remains passive and does nothing is not guilty of negligence, unless he is under some duty to act, and fails to act, and damage in consequence results. No such duty was imposed on the defendants in the absence or notice of admonition. Stop-cocks are generally intended to shut off the water while repairs above them are going on, and the defendants were not informed that the stop-cock on their floor was intended for any purpose. Upon the entire case, it seems to me that the facts are substantially the same as they were at the general term on the former appeal.

The new testimony has not improved the case, nor has the evidence omitted strengthened it.

It follows that the motion for a new trial must be denied, with costs.

In Shugio *v.* Hunting (9 *St. Rep.* 286), an appeal was taken from a judgment recovered on the dismissal of the plaintiff's complaint. The plaintiff was engaged in the business of Japanese goods. On the morning of July 22, 1885, his premises had been flooded with water and his goods damaged. The water apparently proceeded from the second floor, which was over the store. In that apartment a pump was found much out of order; from which the water had probably flowed. Before the occurrence, defendant's agent had the pump repaired, but the repairs did not prevent the discharge of water. The plaintiff could have turned off the water in the basement and prevented an overflow. The plaintiff offered to prove that he had been instructed by the defendant's agent how to turn the water off, and had turned it off every night at that place. The court refused to receive the evidence, and dismissed the complaint. *Held,* error, and new trial ordered.